UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
          :
**MONICA REVILL**,
          :
                        Plaintiff,      :    **MEMORANDUM DECISION AND ORDER**

        – against –           :    24-CV-2782 (AMD) (JAM)

          :
**ERIK PRATZ**, Police Officer, Badge #30562;
**CHRISTIAN TATE WEGENER**, Physician Assistant; **MAXWELL SCOTT WITHORN**, Registered Nurse; **MARK RYDZEWSKI**, Doctor of Osteopathic; **JESSICA E POORAN**, Registered Nurse; **JOHN DOE # 2**, Queens Hospital Staff; **JOHN DOE # 3**, Queens Hospital Staff; **TAUREAN DWIGHT HOWARD**, Medical Doctor; **DENESHA C FINDLEY**, Physician Assistant; **CHRISTIAN CHUDI EYIUCHE**, Medical Doctor; and **JOHN DOE # 1**, Queens Hospital Staff,

                        Defendants.
------------------------------------------------------------------ X

**ANN M. DONNELLY**, United States District Judge:

On April 11, 2024, the *pro se* plaintiff filed a downloadable form complaint titled "Complaint for Violation of Civil Rights," as well as a motion to proceed *in forma pauperis*. (ECF Nos. 1, 2.) The complaint does not describe the requested relief or assert a basis to invoke the Court's jurisdiction. The plaintiff's *in forma pauperis* application is granted for the limited purpose of this Order. For the following reasons, the Court dismisses the complaint *sua sponte* with leave to amend.

## BACKGROUND

On April 11, 2021, the plaintiff's "motor functions shut down" and she needed to go to the hospital "to find out if there was a date rape substance in [her] system;" she told her husband

to "call EMS and the police."¹ (ECF No. 1 at 10.) When the police arrived, the plaintiff told them that she had been drugged. (*Id.*) The police then "cut off the ignition to [her] parked car" and gave her keys "to Police Officer Erick Pratz." (*Id.*) Pratz also "took [the plaintiff's] purse and searched it." (*Id.* at 10, 12–13.)

The plaintiff went to the hospital,² where "Pratz started screaming 'DO YOU THINK YOU'RE SAFE.'" (*Id.* at 10.) Pratz "immediately ran up to [physician's assistant] Tate Wagener and falsely claim[ed] that [the plaintiff] refused to give [her] name." (*Id.* at 10–11.) Wegener "falsely designat[ed] [the plaintiff] as a danger to [her]self and others" without speaking to the plaintiff, evaluating her medical condition, or seeking her consent to treatment. (*Id.* at 14.) The plaintiff says that Pratz, "having access to [her] vehicle and aware of [her] Bronx purchases, fabricated [the prehospital] narrative and relayed it to Wagener and [another doctor who signed the consent for treatment]." (*Id.* at 12–13.) Pratz also allegedly covered his cell phone with a latex glove and recorded the plaintiff. (*Id.* at 11.)

The plaintiff "attempted to call her husband" and remove the "stretch cot straps with the intention of using the restroom." (*Id.* at 12.) At this point, "RN Weithorn turn around and screamed 'OH MY GOD! SHE'S AWAKE, NO YOU CAN'T LEAVE;'" the hospital staff "attacked" her and "Withorn³ ran towards [her] with a pointed needle in the air and stabbed [her] in the upper right neck and back." (*Id.*). The plaintiff "was rendered unconscious from approximately 6:42 am to 12:30 pm." (*Id.* at 12.) During that time, the plaintiff says, Wegener

---

¹ The plaintiff does not identify where this incident took place.

² The plaintiff does not identify which hospital, although it appears that the plaintiff went to a hospital in Queens, New York. (ECF No. 1 at 15 ("On April 14, 2021, I requested a copy of my entire medical record from Queens HIM and did not receive it.").)

³ The plaintiff spells the defendants' names in different ways throughout the complaint.

2

searched her purses, got access to her medical records, undressed her, and "injected [her] with a circular multi pin needle in [her] upper left thigh . . . ." (*Id.*)[4]

The plaintiff claims Mark Rydzewski, Jessica Pooran, Denesha Findley, and Chudi Eyiuche, whom she identifies as medical staff, "did not assess or evaluate [her] medical condition." (*Id.* at 13.) However, the plaintiff also alleges: Rydzewski "said [the plaintiff] appeared to be under the influence of a substance with erratic and violent behavior;" Pooler reported that at 11:48 a.m., the plaintiff had a stroke and seizure and fell off of her bed; at 11:53 a.m., Findley and Eyiuche "said [the plaintiff] was standing up" and "consented to a psychiatric evaluation;" Findley also retrieved the plaintiff's home phone number from her cellular phone, called the plaintiff's husband, and asked him questions about the plaintiff's psychiatric history. *Id.* at 13–14.

The plaintiff says she woke up at a 12:30 p.m.[5] "in a different room from where the attack took place." (*Id.* at 14.) Around 3:00 p.m., one of the plaintiff's friends arrived and Registered Nurse Jijo Jacob told the plaintiff that she could leave. As she was walking out of her room "to call the Police Precinct to get [her] car keys from Officer Prarz [sic], Police officer Mortimor yelled 'NO YOU CAN'T LEAVE.'" (*Id.*) Dr. Taurean Dwight Howard "ran up" to the plaintiff and her friend in the hallway "yelling, and pointing at [the plaintiff's] swollen left hand" and said, 'Look what happened between you and the police,' falsely accusing [her] of fighting the Police." (*Id.* at 14.)

---

[4] She also says that the hospital staff gave her "additional" injections, but these "medications and treatments are absent from [her] medical record." (ECF No. 1 at 12.)

[5] It is not clear from the complaint how she "consented to a psychiatric evaluation at 11:53 a.m." (*id.* at 13), but did not wake up until noon.

3

On April 12, 2021, the plaintiff "lodged a verbal complaint with Ms. Bipasha Haque from Patient Relations NYC Queens Hospital" about the alleged attack on the ambulance stretcher. (*Id.* at 16.)  When the plaintiff said she was injured, Haque asked if she was "going to sue." (*Id.*)

On April 14, 2021, the plaintiff requested medical records from "Queens HIM."[6] (*Id.* at 15.)  On April 16, 2021, the plaintiff spoke with Dr. Howard, who told her that she "was a danger to [her]self and others," and he and the hospital staff "treated [her] accordingly." (*Id.*) On May 4, 2021, the plaintiff received a partial medical record, which included lab results. (*Id.*) The plaintiff requested additional records but says she has not received the full record of treatments, clinical notes, or medication documentation. (*Id.*)

On May 1, 2021, the plaintiff went to St. Luke's Hospital in Utica, New York. (*Id.* at 18.)  She says that "[u]nbeknownst to [her], [a physician's assistant] repeated the drug test PA Wegener of Queens hospital conducted on April 11th, without [her] consent or explanation. Given that PA Wegener of Queens hospital initially ordered the drug test, it can be inferred that there was communication between them regarding the repetition." (*Id.*)

## LEGAL STANDARD

A *pro se* plaintiff's complaint must be "liberally construed, and . . . however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citations omitted).  However, the district court must dismiss an *in forma pauperis* complaint if it "is frivolous," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).  To avoid dismissal for failure to state a claim, a complaint must plead "enough facts to state a claim to relief that is plausible on its

---

[6] It is not clear what the plaintiff means by "Queens HIM."

4

face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly*, 550 U.S. at 555 (citations omitted). Further, if the Court "determines at any time that it lacks subject-matter jurisdiction, [it] must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see also Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.A.R.L.*, 790 F.3d 411, 416–17 (2d Cir. 2015).

In addition, Rule 8 of the Federal Rules of Civil Procedure instructs that the plaintiff must provide a short, plain statement of claim against each defendant named so that they have adequate notice of the claims against them. *Iqbal*, 556 U.S. at 678 (Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."). "[U]nnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (citation omitted); *Komatsu v. City of New York*, No. 20-CV-7046, 2021 WL 3038498, at *5 (S.D.N.Y. July 16, 2021) (noting that "length is only one consideration under Rule 8," and other issues include "redundancy and frequent frolics into seemingly irrelevant materials [which] inhibit the Court and Defendants' ability to understand the nature of many of the issues he has raised."). Dismissal of a complaint for failure to comply with Rule 8 is generally reserved for cases where the complaint is "so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Salahuddin*,

5

861 F.2d at 42.  This standard is applied with special lenience to *pro se* pleadings. *See Simmons v. Abruzzo*, 49 F.3d 83, 87 (2d Cir. 1995).

Finally, 28 U.S.C. § 1331 provides that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States."  "A case aris[es] under federal law within the meaning of § 1331 . . . if a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 689–90 (2006).  A plaintiff properly invokes § 1331 jurisdiction when he or she pleads a colorable claim "arising under" the Constitution or laws of the United States.  *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 513 (2006).  A claim alleging federal question jurisdiction "may be dismissed for want of subject-matter jurisdiction if it is not colorable, i.e., if it is 'immaterial and made solely for the purpose of obtaining jurisdiction' or is 'wholly insubstantial and frivolous.'" *Id.* at 513 n.10.  Although courts hold *pro se* complaints "to less stringent standards than formal pleadings drafted by lawyers," *Hughes v. Rowe*, 449 U.S. 5, 9 (1980), *pro se* litigants must still establish subject matter jurisdiction.  *See, e.g.*, *Rene v. Citibank N.A.*, 32 F. Supp. 2d 539, 541–42 (E.D.N.Y. 1999).

**DISCUSSION**

**I.    Section 1915 and Rule 8**

The complaint, construed liberally, does not "disclose sufficient information to permit the defendant[s] to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery." *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000); *Harnage v. Lightner*, 916 F.3d 138, 141 (2d Cir. 2019).  The plaintiff did not complete the sections of the form complaint that ask for the jurisdictional basis for the plaintiff's claims, the location of the alleged violations, or the requested relief—nor does the plaintiff's appended

6

narrative provide these details. This alone is a sufficient basis for dismissal. *See Koso v. Haegele*, No. 18-CV-4400, 2018 WL 6531496, at \*1–2 (E.D.N.Y. Dec. 11, 2018) (dismissing *sua sponte* where "[the p]laintiff . . . left blank the entire section of the form complaint relating to the basis for this Court's jurisdiction" and did not otherwise "identify any federal law pertaining to her claims"); *see also Clarkes v. Hughes*, No. 17-CV-961, 2018 WL 5634932, at \*3 (E.D.N.Y. Oct. 30, 2018) (dismissing allegations of constitutional violations for lack of subject matter jurisdiction); *cf. Villatoro v. Toulon*, No. 22-CV-109, 2022 WL 493181, at \*3 (E.D.N.Y. Feb. 17, 2022) (dismissing Section 1983 claim because "there are no factual allegations in the complaint concerning any conduct or inaction" by the defendant).

Further, the plaintiff does not explain how the allegations in the complaint amount to a constitutional violation. She claims that Pratz, a police officer, searched her purse without her consent and then provided false information to the hospital staff. She also says that Wegener searched her purse and accessed her medical records. She suggests that Pratz and Wegener were looking for identifying information and medical information; however, she does not explain how this departs from routine hospital procedure and treatment, and there are no additional facts to suggest that these alleged searches were improper.

The plaintiff also claims that Wegener and Weithorn gave her injections, and that certain hospital staff deemed her to be "a danger to herself and others." (*Id.* at 14.) She appears to have been discharged from the hospital later that same day. The plaintiff's only claims against Rydzewski, Pooran, Findley, Eyiuche, and Jacob are that they made notes in her medical records but did not "assess or evaluate" her medical condition. (*Id.* at 13–14.) Finally, she names four John Doe defendants, but she does not describe how these individuals are involved or why their

7

conduct is actionable. The plaintiff says that she did not consent to treatment, but does not explain how these allegations amount to a constitutional violation.

These deficiencies justify dismissal under both § 1915(e)(2)(B) and Rule 8. *Chavez v. Cause Yall Took My Phone I Don't Know Their Names*, No. 21-CV-8526, 2021 WL 5401485, at *1 (S.D.N.Y. Nov. 16, 2021) ("The complaint does not contain a single fact suggesting that [the plaintiff] can state a viable claim that falls within the Court's jurisdiction."); *Hodge v. New York Unemployment*, No. 24-CV-1631, 2024 WL 1513643, at *1 (E.D.N.Y. Apr. 8, 2024); *see also Salahuddin*, 861 F.2d at 42.

**II.     Section 1983**

If the plaintiff intends to pursue a claim under 42 U.S.C. § 1983, the conduct alleged must have "been committed by a person acting under color of state law," and "deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994); *see also McGugan v. Aldana-Bernier*, 752 F.3d 224, 229 (2d Cir. 2014) ("To state a claim under § 1983, a plaintiff must allege that defendants violated plaintiff's federal rights while acting under color of state law."); *Schiff v. Suffolk Cnty. Police Dep't*, No. 12-CV-1410, 2015 WL 1774704, at *5 (E.D.N.Y. Apr. 20, 2015).

Here, the plaintiff does not allege facts sufficient to show that the defendants acted in concert with state actors in furtherance of an unconstitutional act. She does not explain how the actions of seemingly private parties—the hospital staff members—are attributable to the state in any way. Private conduct, no matter how discriminatory or wrongful, is generally beyond the reach of § 1983. *See American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50, (1999); *cf. Brentwood Academy v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) ("[S]tate action may be found if, though only if, there is such a 'close nexus between the State and the

8

challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'") (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)).  And in fact, hospitals and hospital staff are "generally not considered" state actors.  *Anthony v. Med. Staff at Inst.*, No. 16-CV-1122, 2016 WL 1383491, at *2 (E.D.N.Y. Apr. 7, 2016) (quoting *White v. St. Joseph's Hosp.*, 369 F. App'x 225, 226 (2d Cir. 2010)); *see Kia P. v. McIntyre*, 235 F.3d 749, 757 n.3 (2d Cir. 2000) ("Our decision in this case turns in large part on our conclusion that the [private] Hospital was not a state actor when it provided medical care to [plaintiff]."); *Jones v. Beth Israel Hosp.*, No. 17-CV-3445, 2018 WL 1779344, at *5 (S.D.N.Y. Apr. 12, 2018) (dismissing § 1983 claims against hospital and noting that "[i]t is well established that private conduct is not controlled by Section 1983, unless the private entity's challenged actions are fairly attributable to the state."); *Abdul-Rahman v. Brooklyn Hosp. Ctr.*, No. 10-CV-1697, 2010 WL 1838607, at *1 (E.D.N.Y. Apr. 30, 2010) ("[Brooklyn Hospital] is a private entity and its employees are private parties, not state actors.").

Even assuming that Pratz, the only defendant who is not employed by the hospital, violated her constitutional rights, the plaintiff must explain how the private parties are "jointly engaged" in that conduct.  *See, e.g.*, *Betts v. Shearman*, 751 F.3d 78, 85 (2d Cir. 2014) ("Where . . . a police officer exercises independent judgment in how to respond to a private party's legitimate request for assistance, the private party is not jointly engaged in the officer's conduct so as to render it a state actor under Section 1983." (quoting *Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268, 272 (2d Cir. 1999))).  She does not do so here.  The plaintiff is therefore on notice of Section 1983's requirements should she choose to amend her complaint.

### III.     *In Forma Pauperis* Application

Finally, the plaintiff's application to proceed *in forma pauperis* is incomplete.  The plaintiff says that she is unemployed and has no income or cash.  (ECF No. 2 at 1, 3.)  However,

9

she owns a car valued at $15,000 and makes monthly mortgage payments of $300 a month. (*Id.* at 3.) She also reports a "school loan" to Nelnet[7] in the amount of $70,000. *Id.* The application does not explain how the plaintiff makes her house and student loan payments, or how she affords basic necessities, given her reported income.

If she chooses to amend the complaint, the plaintiff must file the Long Form *in forma pauperis* application and include sufficient financial information to establish that she is "unable to pay [filing] fees or give security therefor." 28 U.S.C. § 1915(a)(1); *see Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948) (A litigant qualifies to proceed *in forma pauperis* if she "cannot because of his poverty pay or give security for" the costs of filing "and still be able to provide himself and [his] dependents with the necessities of life."); *Bey v. Queens Cnty., Supreme Cts.*, No. 19-CV-2038, 2019 WL 11690197 (E.D.N.Y. May 1, 2019) (dismissing the action without prejudice where the plaintiffs did not pay the filing fee or submit an adequate *in forma pauperis* application). The plaintiff says that she has no income or other assets. However, she does not explain how she makes her house payments or pays for the necessities of daily living. If the plaintiff's husband is providing financial support, that support is relevant to her claim of indigency; the Long Form application allows both spouses to provide their relevant financial information.

---

[7] Nelnet is a student loan services organization. *See* Nelnet Landing Page, https://nelnet.com/ (last visited May 1, 2024).

10

## CONCLUSION

For these reasons, the complaint is dismissed. The Second Circuit has advised that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). However, where a court does not find that the complaint, liberally construed, "suggests that the plaintiff has a claim that she has inadequately or inartfully pleaded," but instead that "[t]he problem with [the plaintiff's] causes of action is substantive [and] better pleading will not cure it," "[r]epleading would . . . be futile" and leave to replead "should be denied." *Id.* (citing *Hunt v. All. N. Am. Gov't Income Tr.*, 159 F.3d 723, 728 (2d Cir. 1998)).

The Court has carefully considered the allegations in the complaint and, out of an abundance of caution, grants the plaintiff leave to amend within 30 days. However, as explained above, the plaintiff must provide a "short and plain statement" of facts sufficient to demonstrate how the defendants violated her constitutional rights. The plaintiff is also on notice of the requirements to pursue a § 1983 claim. If the plaintiff chooses to amend without addressing the deficiencies identified in this Order, or does not amend within the time allotted, the Court will dismiss the complaint without a second chance to amend and close the case.

The plaintiff is advised that the amended complaint will replace the original complaint, must be captioned "Amended Complaint," and must bear the same docket number as this Memorandum and Order: 1:24-CV-2782 (AMD) (JAM). For free, limited-scope legal assistance, the plaintiff may wish to consult the City Bar Justice Center's Federal Pro Se Legal Assistance Project in Brooklyn by calling (212) 382-4729.

11

**SO ORDERED.**

   s/Ann M. Donnelly

ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
       May 1, 2024

12